**Affirmed and Opinion Filed July 29, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01400-CR

**DERRICK BERNARD DONNELLE, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-61317-T**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice Francis

Derrick Bernard Donnelle appeals his conviction for the murder of Detrick Brackens. After finding appellant guilty and also finding that he used a firearm, a deadly weapon, during commission of the offense, the jury assessed punishment at fifty years in prison. In a single issue, appellant claims the evidence is legally insufficient to negate his self-defense claim. We affirm.

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the

witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. When an appellant challenges the legal sufficiency of the evidence supporting a jury's rejection of a self-defense claim, we do not look to whether the State presented evidence which refuted appellant's self-defense testimony; rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense "beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person commits an offense if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a).

The indictment and jury charge alleged that, on or about October 25, 2011, appellant (1) intentionally or knowingly caused Brackens's death by shooting Brackens with a firearm, a deadly weapon, or (2) intended to cause serious bodily injury to Brackens and committed an act clearly dangerous to human life, shooting Brackens with a firearm, that caused Brackens's death. The charge instructed the jury on self defense as defined by the penal code and set forth above.

At trial, Shaterica Asberry said she was at home with her boyfriend, Jamario Watson, on the day Brackens was killed. Watson was helping Asberry take care of her two small children as

well as three other young children.  Around 1:30 p.m., Asberry heard men's voices outside her window.  She looked out and saw appellant holding a gun.  Brackens was trying to get around appellant, but appellant would not let him pass.  A third man in a white shirt and khakis stood nearby watching.  According to Asberry, Brackens did not have a gun and was not acting aggressive.  In fact, Brackens had his hands up in the air and was pleading.  Appellant, on the other hand, had a gun and was taunting Brackens, saying he would not let Brackens leave.  Appellant aimed at Brackens's left leg and shot him.  Brackens fell but managed to pull himself up.  He turned and tried to move away, but appellant shot him in the right leg.  Brackens fell to the ground, unable to walk; he tried to get up, but could not.  He tried to slide his body on the ground away from appellant, but appellant "kept cutting him off to where he couldn't get around."

At that point, appellant shot Brackens once in the torso.  Asberry said Brackens was "nonresponsive . . . not able to talk . . . just laying there still."  She assumed he was dead.  Appellant shot Brackens three or four more times.  He checked to see if Brackens was still alive, then rolled Brackens onto his stomach and "pistol-whipped him twice in the back of his head with the gun."  Appellant hit him hard enough in the head to cause blood to come out "really hard."  The man in the khakis started going through Brackens's pockets, but appellant told him to leave.  Appellant wiped the gun with his shirt, put the gun in Brackens's hand, then, using the same gun, shot a hole in his own shirt and shot himself in the leg.  Appellant walked away and appeared to be talking on the phone.  Asberry called the police.  An ambulance arrived shortly, and appellant was placed inside.

Watson likewise testified that appellant appeared the aggressor and shot Brackens first in one leg, then the other, and finally several times in Brackens's body.  According to Watson,

3

Brackens had no weapon and made no aggressive moves toward appellant. After appellant shot Brackens, he checked to see if Brackens was dead, flipped him over, and hit him twice in the back of the head with the gun. Appellant wiped the gun on his shirt and put it in Brackens's hand. Appellant then took the gun, shot a hole through his shirt, and shot himself in the leg. Watson described appellant's attitude throughout as "pretty aggressive" and said appellant did not appear to be afraid.

Medical examiner Janis Townsend-Parchman said Brackens sustained seven gunshot wounds, one in each leg, four in the torso, and one to the right side of his face. He also had two lacerations to the back of his head. The force from these blows split the scalp open to the skull.

According to appellant, he smoked PCP and was hanging out with several others, including Brackens. Two women walked up and told Brackens he should not have taken money from a friend of appellant's named Marcus Lewis. Upon hearing this, appellant confronted Brackens who said he was going to get his pistol. Appellant said Brackens threatened to kill him several times, but appellant calmed him down. The men split up, and appellant went around the corner to "chill and relax."

When appellant returned, Brackens walked up to him and verbally threatened him again, then reached for a pistol in his pocket. Appellant grabbed for the gun, and the men struggled. The gun fell to the ground, and appellant picked it up. He looked at Brackens who turned and ran. Appellant admitted he was mad and chased Brackens to "[m]ake sure he leave the apartment [grounds]" and because he thought Brackens was still a threat even though appellant had his gun. He also said he could see Brackens was high and not "in his right mind." Brackens stopped running, turned, and approached appellant. According to appellant, he "just reacted" and "just went off," shooting Brackens. He could not remember how many times he shot

Brackens nor could he remember how he got shot. He felt Brackens would have shot him if he had not defended himself, but he conceded Brackens did not have another gun. Appellant claimed he feared for his life the entire time, even after he got the gun and shot Brackens who fell to the ground. Appellant said he was "pretty much like shook up of the whole incident."

He conceded on cross-examination that he told the 911 operator Brackens tried to jack him and rob him. He also conceded he told a detective at the hospital that Brackens shot him first and he followed Brackens because he was mad about being shot. He claimed he had no idea how he got a bullet hole in his shirt or a gunshot wound in his leg, claiming he had did not recall shooting himself. After hearing this and other evidence, the jury convicted appellant of Brackens's murder, rejecting his claim of self defense.

Although appellant claims he was scared and shot Brackens in self defense, appellant admitted chasing after Brackens with the gun when Brackens ran away. Asberry and Watson each testified appellant was the aggressor during the interaction they saw and Brackens was attempting to get away when appellant shot him. They also testified appellant checked Brackens to see if he was alive, then pistol-whipped the back of his head. The jury resolves any conflicts in the evidence and is free to accept or reject any and all of the defensive evidence. See TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979 ); *Saxton*, 804 S.W.2d at 913. Thus, the jury was entitled to believe the testimony of Asberry and Watson and disbelieve appellant's. After viewing all the evidence in the light most favorable to the prosecution, we conclude any rational trier of fact would have found against appellant on the issue of self defense. *See Saxton*, 804 S.W.2d at 914. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
121400F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DERRICK BERNARD DONNELLE,
Appellant

No. 05-12-01400-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-61317-T.
Opinion delivered by Justice Francis,
Justices FitzGerald and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 29, 2013

/Molly Francis/
MOLLY FRANCIS
JUSTICE